# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WHITNEY ELSESSER,** | ) |
| **Plaintiff,** | ) CIVIL ACTION NO. |
| v. | ) |
| **UNIVERSITY OF PITTSBURGH PHYSICIANS,** | ) |
| **Defendant.** | |

## COMPLAINT

### I. PRELIMINARY STATEMENT

By this action, Plaintiff, Whitney Elsesser, seeks wage loss, compensatory and punitive damages, and attorneys' fees and costs as a result of having her employment terminated by Defendant, University of Pittsburgh Physicians, because of her race. Defendants' actions in this regard violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the Pennsylvania Human Relations Act, as amended (PHRA), 43 P S § 951 *et seq.*, and The Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended.

### II. JURISDICTION

1. This court has jurisdiction of this matter by virtue of 28 U.S.C. § 1331, in that this is a civil action wherein the matter in controversy arises under the laws of the United States. This court also has jurisdiction of this matter under 28 U.S.C. § 1367, in that this is a civil action of which this federal district court has original jurisdiction, and certain of Plaintiff's claims are brought under Pennsylvania state law, which are related to the federal claims in this action in that

they form part of the same case or controversy under Article III of the Constitution of the United States.

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that this is a civil action in which jurisdiction is not founded solely on diversity of citizenship and the acts constituting a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

### III.     PARTIES

3. Plaintiff, Whitney Elsesser ("Elsesser"), is an adult individual and citizen of the United States of America and the state of Pennsylvania, residing at 322 Trinity Way, Wexford, Pennsylvania 15090.

4. Defendant, University of Pittsburgh Physicians ("UPP"), is a Pennsylvania domestic nonprofit corporation, with its corporate headquarters located at 200 Lothrop Street Pittsburgh, PA 15213. UPP is affiliated with UPMC and employs medical providers to provide care to patients at UPMC locations, facilities and hospitals.

### IV.     STATEMENT OF CLAIM

5. Elsesser began working in March 2022 for UPP as a Certified Nurse Midwife ("CNM") at UPMC-Horizon.

6. During her tenure working for UPP at UPMC Horizon, Elsesser was the only African American CNM out of a total of 4 midwives who worked at the hospital.

7. From the time she began the job in March 2022 through May 2023, Elsesser raised various concerns with management about discrepancies between promises made about her schedule before she started the job and the reality of her work schedule once she began.

8. In May 2023, after discussing these scheduling issues with her co-workers, Elsesser approached the lead midwife, Sarah Benckart, and spoke to her about the trouble she was having with the schedule. Elsesser was professional during the entire conversation.

9. Despite her professionalism and the calm way Elsesser approached this conversation, Benckart reported to HR that Elsesser made her and other staff feel uncomfortable and unsupported.

10. After Elsesser spoke further with HR, it told her that her only solution to her scheduling concerns was to go with a casual employment status. Elsesser accepted HR's recommendation and signed a casual employment agreement on July 21, 2023.

11. Not long afterward, on July 27, 2023, Elsesser was informed by the head of their Department, Dr. Robert Edwards, of complaints about her "behavior," leading to allegations and a conclusion that she had violated UPMC's Code of Conduct by complaining to co-workers about workplace issues that she should have kept confidential, including being dissatisfied with their leader.

12. As suggested by Dr. Edwards, Elsesser met with EAP Program Manager, Victoria Deans, and left that meeting with a renewed commitment to navigating her professional relationships with even greater care.

13. During the next month, Elsesser had no further issues with anyone in her department and everything seemed to be going well.

14. Additionally, contrary to Defendant's position raised after the termination during the EEOC process that Elsesser's colleagues continued to report problems with Elsesser, no one from Defendant raised any issue in that regard to Elsesser.

15. However, about one month after she received the letter from Dr. Edwards, Elsesser's employment was abruptly terminated, and she was not given any additional support or other chance to improve upon any perceived issue with her communication skills or level of professionalism.

16. On the contrary, Elsesser is aware that UPP did not terminate the employment of the following several similarly situated white individuals who had similarly complained of workplace issues and faced similar allegations of complaining to co-workers about issues with leadership:

    a. Rachel Seimen, a white CNM (Certified Nurse Midwife), also complained to management about scheduling issues and even voiced her displeasure to Elsesser about her conversation with management. Despite being relegated to casual duty, Seimen is still employed by UPP.

    b. Amanda Bashline, a white CNM, started at UPMC Horizon in November 2023. Upon information and belief, she has had issues completing her charting and patient care in the office setting but received mentoring and remediation to fix the situation. She has also been noted to have verbally berated nursing staff in patient rooms and at the nursing station, and there have been complaints about her lack of professionalism as far back as December of 2023. Upon information and belief, none of these issues have been resolved and Bashline remains employed at UPMC Horizon.

    c. There have been several white doctors who provide medical care at UPMC Horizon who have been accused of having similar issues with professionalism during communications with staff and yet are still employed at UPMC Horizon. For example, Dr. Soberdash, a white physician, had a conflict with her scheduler,

Amanda Myers. Dr. Soberdash complained loudly and frequently on the hospital unit and during monthly team meetings about Myers and Dr. Soberash voiced her concerns regarding her schedule in both the operating room and the labor and delivery unit. Defendant bent over backwards for Dr. Soberdash to reconcile the issue, by, among other things, meeting with her several times about its concerns about her behavior. These meetings lasted about 2-3 months and, upon information and belief, Dr. Soberdash remains employed at UPMC Horizon.

17. On August 29, 2023, Defendant notified Elsesser that her employment was being terminated effective September 27, 2023.

18. The reason given by Defendant on August 29, 2023 for terminating Elsesser's employment was that she violated UPMC's Code of Conduct by complaining to co-workers about her interactions with superiors in the department concerning scheduling issues.

19. After-the-fact, in its Position Statement submitted to the EEOC, for the first time, Defendant added that it chose to terminate the employment of Elsesser "because [UPMC Horizon] was fully staffed [and] did not have a need for a casual CNM who worked no more than fifteen (15) hours per week and restricted the days she was able to work, ….."

20. On the contrary, Defendant still had a need for casual CNMs at the time it terminated Elsesser, as there were numerous vacancies on the schedule and an active job posting for a midwife at UPMC Horizon, which indicated a need for more CNMs.

21. Additionally, Elsesser averaged 26 hours per week during the last two months of her employment, far exceeding the 15 hours Defendant stated Elsesser had been working. This also shows that Elsesser was willing to exceed the hours of a casual midwife and her willingness to meet the department's needs.

22. The stated reasons of Defendant for terminating Elsesser's employment were pretextual to disguise the real reason it did so, due to her race, African American.

23. As a result of Defendant's actions, Elsesser has suffered wage loss, pain and suffering and emotional distress, and loss of reputation.

## V.     CLAIMS FOR RELIEF

### COUNT I – COUNT I - VIOLATION OF TITLE VII – RACE

24. Plaintiff incorporates by reference the averments contained in the preceding paragraphs above as if set forth fully herein.

25. Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and procedures in discriminating against Elsesser with respect to compensation, terms, conditions, or privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

26. Defendant's unlawful acts, practices, policies and/or procedures in employment, and specifically terminating Elsesser, were induced by its intent to discriminate against Plaintiff on the basis of her race, African American.

27. Elsesser has been directly harmed as a result of these violations as is fully set forth above.

### COUNT II - VIOLATION OF TITLE VII – RETALIATION

28. Plaintiff incorporates by reference the averments contained in the preceding paragraphs above as if set forth fully herein.

29. Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and procedures in discriminating against Elsesser with respect to

compensation, terms, conditions, or privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3.

30.     Defendant unlawfully terminated Elsesser in retaliation for her opposition to Defendant's unlawful employment practice, and specifically her complaints to Defendant that she was being treated differently and retaliated against on the basis of her race, African American, as fully set forth above.

31.     Elsesser has been directly harmed as a result of these violations as is fully set forth above.

## **COUNT III - VIOLATION OF THE PHRA – RACE**

32.     Plaintiff incorporates by reference the averments contained in the preceding paragraphs above as if set forth fully herein.

33.     Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and procedures in discriminating against Elsesser with respect to compensation, terms, conditions, or privileges of employment in violation of the Pennsylvania Human Relations Act, as amended, 43 P.S. § 955(a).

34.     Defendant's unlawful acts, practices, policies and/or procedures in employment, and specifically terminating Elsesser, were induced by its intent to discriminate against Plaintiff on the basis of her race, African American.

35.     Elsesser has been directly harmed as a result of these violations as is fully set forth above.

## **COUNT IV - VIOLATION OF THE PHRA – RETALIATION**

36.     Plaintiff incorporates by reference the averments contained in the preceding paragraphs above as if set forth fully herein.

37. Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and procedures in discriminating against Elsesser with respect to compensation, terms, conditions, or privileges of employment in violation of the Pennsylvania Human Relations Act, as amended, 43 P.S. § 955(a).

38. Defendant unlawfully terminated Elsesser in retaliation for her opposition to Defendant's unlawful employment practice, and specifically her complaints to Defendant that she was being treated differently and retaliated against on the basis of her race, African American, as fully set forth above.

39. Elsesser has been directly harmed as a result of these violations as is fully set forth above.

## COUNT V - VIOLATION OF SECTION 1981

40. Plaintiff incorporates by reference the averments contained in the preceding paragraphs above as if set forth fully herein.

41. Defendant terminated Elsesser because of her race, African American.

42. Defendant's actions in terminating Elsesser because of her race deprived her of the same right to make and enforce contracts as is enjoyed by white citizens, in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

43. Defendant's actions toward Plaintiff were undertaken with reckless indifference to her federally protected right to make and enforce contracts irrespective of her race.

44. Plaintiff has been directly harmed as a result of these violations as is fully set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will:

(a) Assume jurisdiction herein;

(b) Declare Defendants' conduct to be unlawful and an intentional violation of Plaintiff's rights;

(c) Award Plaintiff wage loss damages, including back pay, front pay, lost fringe and other benefits of employment, including health benefits;

(d) Award Plaintiff compensatory damages under all counts;

(e) Award Plaintiff punitive damages under Title VII and 42 U.S.C. Section 1981.

(e) Award Plaintiff costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

(f) Grant such other relief as the Court deems just and appropriate.

Respectfully submitted,

**JURY TRIAL DEMANDED**

*s/ David B. Spear*
David B. Spear
PA ID No. 62133

*s/ Gabrielle Shaulis*
Gabrielle Shaulis
PA ID No. 334275

Minto Law Group, LLC
811 Camp Horne Road, Suite 320
Pittsburgh, PA  15237
(o) 412-201-5525
(f) 412-201-5526
dspear@mintolaw.com
gshaulis@mintolaw.com

Counsel for Plaintiff